**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4642-18

STATE OF NEW JERSEY

    Plaintiff-Respondent,

v.

ARTURO ESPICHAN,

    Defendant-Appellant.

_____

Submitted December 1, 2020 – Decided February 16, 2021

Before Judges Fisher and Moynihan.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Indictment No. 96-12-3980.

Joseph E. Krakora, Public Defender, attorney for appellant (David J. Reich, Designated Counsel, on the brief).

Theodore N. Stephens II, Acting Essex County Prosecutor, attorney for respondent (Barbara A. Rosenkrans, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Arturo Espichan pleaded guilty to second-degree conspiracy to commit robbery and aggravated sexual assault, N.J.S.A. 2C:5-2, N.J.S.A. 2C:15-1 and N.J.S.A. 2C:14-2; third-degree criminal restraint,[1] N.J.S.A. 2C: 13-2; first-degree robbery, N.J.S.A. 2C:15-1; second-degree aggravated assault, N.J.S.A. 2C:12-1(b)(1); and third-degree unlawful possession of a weapon, N.J.S.A. 2C:39-4(d).[2] Facing deportation to his native Peru, he filed a petition for post-conviction relief (PCR) more than twenty years after he was sentenced. He appeals from the denial of that petition, arguing:

> POINT I
>
> [DEFENDANT] HAS ESTABLISHED A PRIMA FACIE CASE THAT HIS INITIAL COUNSEL WAS INEFFECTIVE IN FAILING TO ADEQUATELY REVIEW WITH HIM THE GUILTY PLEA FORM PROVISION REGARDING DEPORTATION.
>
> POINT II
>
> [DEFENDANT] HAS ESTABLISHED A PRIMA FACIE CASE THAT HE WAS PREJUDICED BY HIS COUNSEL'S DEFECTIVE PERFORMNCE.

---

[1] Count two was amended from first-degree kidnapping, N.J.S.A. 2C:13-1(b)(1).

[2] As part of the plea agreement, the State agreed to dismiss: first-degree attempted murder, N.J.S.A. 2C:11-3 and N.J.S.A. 2C:5-1; first-degree aggravated sexual assault, N.J.S.A. 2C:14-2(a); third-degree terroristic threats, N.J.S.A. 2C:12-3; and fourth-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(d).

POINT III

[DEFENDANT] IS ENTITLED TO AN EVIDENTIARY HEARING.

POINT IV

[DEFENDANT]'S PETITION SHOULD NOT BE TIME-BARRED.

Reviewing the factual inferences drawn by the PCR judge and his legal conclusions de novo because he did not conduct an evidentiary hearing, State v. Blake, 444 N.J. Super. 285, 294 (App. Div. 2016), and considering "the facts in the light most favorable to [the] defendant," State v. Preciose, 129 N.J. 451, 462-63 (1992), we affirm because defendant did not establish a prima facie case of ineffective assistance of counsel under the test set forth in Strickland v. Washington, 466 U.S. 668 (1984),[3] to warrant an evidentiary hearing, Preciose,

___

[3] To establish a PCR claim of ineffective assistance of counsel, a defendant must satisfy the two-prong test formulated in Strickland, 466 U.S. at 687, and adopted by our Supreme Court in State v. Fritz, 105 N.J. 42, 58 (1987), first by "showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment," then by proving he suffered prejudice due to counsel's deficient performance, Strickland, 466 U.S. at 687; see also Fritz, 105 N.J. at 52. Defendant must show by a "reasonable probability" that the deficient performance affected the outcome. Fritz, 105 N.J. at 58.

129 N.J. at 462-63; see also R. 3:22-10(b), and his PCR petition is time-barred, R. 3:22-12(a)(1).

Although the United States Supreme Court held in Padilla v. Kentucky, 559 U.S. 356, 368-69 (2010), that the Sixth Amendment obligation to render effective assistance requires counsel to inform clients of the possible immigration consequences of entering a guilty plea, our Supreme Court, in State v. Gaitan, 209 N.J. 339, 372-73 (2012), held that Padilla had only prospective application because it established a new rule of law, see also Chaidez v. United States, 568 U.S. 342, 357-58 (2013).

At the time defendant entered his plea in 1997, his counsel was not required to give any advice about the deportation consequences of pleading guilty; a defendant could, however, establish the first prong of the Strickland/ Fritz test by showing his counsel gave false or affirmatively misleading advice about the deportation consequences of pleading guilty. State v. Nuñez-Valdéz, 200 N.J. 129, 140-42 (2009). "Only if defendant's attorney affirmatively gave incorrect advice about the deportation consequences of his guilty plea might he be entitled to set aside his conviction in accordance with the holding of Nuñez-Valdéz." State v. Brewster, 429 N.J. Super. 387, 394-95 (App. Div. 2013).

4                                                                          A-4642-18

As the PCR judge noted, defendant does not claim his plea counsel gave him any advice regarding immigration consequences. In his merits brief, he acknowledged his PCR petition alleged his plea counsel "never told [him] that entering the [guilty] plea would subject [him] to mandatory removal from the United States," and that his PCR counsel argued that his plea counsel "had provided ineffective assistance in failing to advise [defendant] of the immigration consequences of the guilty plea." Contrary to defendant's claim, his plea counsel was not ineffective under the standard in effect at the time defendant entered his plea. See Gaitan, 209 N.J. at 372.

Further, defendant's contention that he "did not have notice of the immigration consequences of his guilty plea until almost [twenty] years later[] when he received that advice from [U.S. Immigration and Customs Enforcement (ICE)] officials who told him he would be deported as a result of his earlier plea," is belied by the record. Unlike the plea form in State v. Antuna, 446 N.J. Super. 595 (App. Div. 2016), upon which defendant relies to support his argument, the answer, "yes," is circled in response to question seventeen of defendant's plea form that asked: "Do you understand that if you are not a United States citizen or national, you may be deported by virtue of your guilty plea?" Defendant's initials appear at the bottom of the page. While defendant

now contests that the initials are his, in his PCR petition—verified as true and signed by defendant—defendant concedes he signed the plea form.[4] Like the Court in Gaitan, 209 N.J. at 375, "[w]e are unable to conclude that following the then-existing plea form resulted in misadvice being provided to [defendant], particularly where there is no evidence or claim that, at the time, defendant sought more information about immigration consequences and was then misinformed by counsel."

The PCR judge correctly held defendant was not entitled to an evidentiary hearing because he did not make a prima facie showing of entitlement to such relief by demonstrating "a reasonable likelihood that his or her claim will ultimately succeed on the merits." State v. Marshall, 148 N.J. 89, 158 (1997); see also Preciose, 129 N.J. at 463.

In that defendant failed to establish that his plea counsel rendered ineffective assistance, we need not examine whether defendant also established "that there is a reasonable probability that, but for counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial," Hill v. Lockhart, 474 U.S. 52, 59 (1985); see also Nuñez-Valdéz, 200

---

[4] The plea transcript was not provided with in the appellate record. In his PCR petition, defendant informs that "those records were destroyed" in the passage of time between the 1997 plea hearing and the filing of his PCR.

N.J. at 139, and that his "decision to reject the plea bargain would have been rational under the circumstances," Padilla v. Kentucky, 559 U.S. at 372. Although defendant was ultimately sentenced to a twelve-year prison term with four years of parole ineligibility when he faced between fifteen and thirty years on the first-degree kidnapping charge alone, N.J.S.A. 2C:13-1(c)(1), the absence of a plea transcript hampers our review of that issue. See Lee v. United States, 582 U.S. ___, 137 S.Ct. 1958, 1967 (2017) (holding "[c]ourts should not upset a plea solely because of post hoc assertions from a defendant about how he would have pleaded but for his attorney's deficiencies" and "[j]udges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences"); Strickland, 466 U.S. at 687, 694; State v. DiFrisco, 137 N.J. 434, 457 (1994).

We also concur with the PCR judge's determination that defendant's petition was time barred. A first petition for PCR must be filed within five years of "the date of entry[,] pursuant to Rule 3:21-5[,] of the judgment of conviction that is being challenged." R. 3:22-12(a)(1). A late filing may be considered if the petition itself shows excusable neglect for the late filing and that a fundamental injustice will result if defendant's claims are not considered on their merits, Brewster, 429 N.J. Super. at 400; R. 3:22-12(a)(1)(A); or the petition is

filed under Rule 3:22-12(a)(1)(B) within one year from the date of discovery of that factual predicate on which relief is sought "if that factual predicate could not have been discovered earlier through the exercise of reasonable diligence," R. 3:22-12(a)(2)(B). "Absent compelling, extenuating circumstances, the burden to justify filing a petition after the five-year period will increase with the extent of the delay." State v. Afanador, 151 N.J. 41, 52 (1997). "[A] court should relax Rule 3:22-12's bar only under exceptional circumstances. The court should consider the extent and cause of the delay, the prejudice to the State, and the importance of the petitioner's claim in determining whether there has been an 'injustice' sufficient to relax the time limits." State v. Mitchell, 126 N.J. 565, 580 (1992).

Defendant filed his PCR petition in October 2017, over twenty years after the sentencing judge filed the judgment of conviction in April 1997. We reject defendant's argument that he established excusable neglect because he did not learn that he would be deported until he was informed by ICE officials, and he "cannot be faulted for failing to take action concerning an issue of which he was unaware." Actually, he can. "Ignorance of the law and rules of court does not qualify as excusable neglect." State v. Merola, 365 N.J. Super. 203, 218 (Law Div. 2002), aff'd o.b., 365 N.J. Super. 82 (App. Div. 2003). Similarly, a

8

defendant's "lack[] [of] sophistication in the law" is not excusable neglect. State v. Murray, 162 N.J. 240, 246 (2000). Nor does lack of factual knowledge amount to excusable neglect. See State v. Cummings, 321 N.J. Super. 154, 166 (App. Div. 1999).

We also note defendant concedes in his PCR petition and his merits brief that he was taken into ICE custody on August 11, 2016. Knowing that he faced deportation, he still did not file the PCR petition for over fourteen months. He thus is not entitled to relief under Rule 3:22-12(a)(1)(B) because he did not file within one year of the date he knew of the factual predicate for his PCR petition.

In rejecting defendant's claim of excusable neglect, we also consider the prejudice to the State. Obviously if it were required to reconstruct this matter for trial, the State would be prejudiced by defendant's significant filing delay. Our Supreme Court recognized:

> [a]s time passes after conviction, the difficulties associated with a fair and accurate reassessment of the critical events multiply. Achieving "justice" years after the fact may be more an illusory temptation than a plausibly attainable goal when memories have dimmed, witnesses have died or disappeared, and evidence is lost or unattainable. . . . Moreover, the [time-bar] Rule serves to respect the need for achieving finality of judgments and to allay the uncertainty associated with an unlimited possibility of relitigation. The Rule therefore strongly encourages those believing they have grounds for post-conviction relief to bring their claims

swiftly, and discourages them from sitting on their rights until it is too late for a court to render justice.

[Mitchell, 126 N.J. at 575-76.]

Defendant is not entitled to relief from the time bar.

To the extent defendant's remaining arguments are not addressed, we determine they are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4642-18